IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| THOMAS CLAY | § | |
| v. | § | CIVIL ACTION NO. 9:04cv72 |
| DAVID L. STACKS, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Thomas Clay, proceeding *pro se*, filed this lawsuit complaining of alleged violations of his constitutional rights. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Clay complained about a number of issues, including allegations of improper medical care, excessive use of force, denial of food, denial of the right to attend a disciplinary hearing, denial of religious services, conditions of confinement in administrative segregation, failure to investigate his allegations, invasion of privacy, and retaliation. An evidentiary hearing was conducted on September 24, 2004.

Following this hearing, all of Clay's allegations except for his complaints of denial of medical care by Nurse Galloway and denial of food were dismissed. Nurse Galloway, Warden Stacks, Lt. Martinez, and Sgt. Bridges were ordered to answer the lawsuit, which they did.

On August 31, 2005, the Defendants filed their motion for summary judgment. Clay sought an extension of time in which to respond, but never did file a response.

Clay complained that he was denied numerous meals because he could not stand, face the wall, and kneel down, as required by prison policy. The Defendants noted that Clay had been seen on several occasions by medical personnel, who all concluded that there was no reason that he could

1

not stand or walk. Prior to his placement in administrative segregation, he was seen again by the medical department, which again concluded that he had no listed or known injuries which would prevent him from walking or standing.

The Defendants pointed out that the administrative segregation feeding procedures require inmates to turn on the cell light and go to the rear of the cell, facing the back of the wall, while the officer opens the food slot and places the tray on the door. The inmate then retrieves the tray and returns to the back of the cell so that the officer can close the tray slot door. The Defendants Bridges and Martinez say that while Clay was in segregation, they contacted the medical staff, who verified that Clay had no known injuries which would prevent him from walking or standing. When Clay did not comply with these procedures, he was refused meals on no fewer than 10 occasions.

In another complaint, Clay says that Nurse Galloway refused to provide him medical care after force was used on him, including a refusal to decontaminate him from chemical agents, and "falsified" the medical records in some way. The Defendants' motion for summary judgment says that Galloway and a physician's assistant named Young examined Clay on August 21, 2003, and found no obvious deformities or abnormalities.

An affidavit by a physician named Dr. Vincent says that in use of force case no. 00535-02-04, there was no evidence to support that Clay was injured, which was properly documented by Nurse Galloway. In use of force case no. 00919-02-04, Clay did not complain of being injured, which also was documented by Nurse Galloway. Dr. Vincent said that a review of the records showed no evidence of falsification nor any evidence that Galloway did not properly evaluate Clay. Dr. Vincent also said that there was no medical basis upon which to conclude that Clay cannot walk.

On December 28, 2005, the Magistrate Judge issued a Report recommending that the motion for summary judgment be granted. The Magistrate Judge observed that the Fifth Circuit has held that the prison regulations at issue in this case are reasonably related to a legitimate penological interest and that requiring inmates to kneel with their hands behind their back before receiving their

meals - as Clay was required to do in this case - was not a constitutional violation. <u>Talib v. Gilley</u>, 138 F.3d 211, 214 (5th Cir. 1998).

Unlike the situation in <u>Talib</u>, Clay claimed that he was physically unable to comply with the regulations. However, the Magistrate Judge said, Clay has been repeatedly examined by medical personnel, who have unanimously concluded that there is no reason that he cannot walk. Consequently, the Magistrate Judge said, Clay failed to overcome the immunity defense.

In this regard, the Magistrate Judge said, Clay has failed to show that the Defendants involved in the denial-of-food claim, Martinez, Bridges and Stacks, had acted unreasonably. As the Magistrate Judge stated, these officers had two conflicting sources of information: Clay said that he could not walk, while the medical department said that there was no reason that he could not walk. Under these circumstances, it was not unreasonable for the officers to believe the medical professionals rather than the prisoner; this Court, like the Magistrate Judge, is aware of no legal authority mandating that prison officials believe an inmate's account of his medical condition rather than a determination made by health care professionals. As a result, there is no showing that Martinez, Stacks, and Bridges acted unreasonably in expecting Clay to be able to walk and thereby comply with the regulations, as the medical staff made clear that he could.

The Magistrate Judge went on to state that Clay had failed to show that the prison officials had a culpable state of mind as is required to show cruel and unusual punishment. The denial of food was not done to punish Clay, but because he would not comply with the feeding regulations, which were themselves rationally related to a legitimate penological interest as set out by the Fifth Circuit in <u>Talib</u>. Nor did Clay's claim that he was removed from special penalty cell restriction ten days early set out a constitutional claim.

Turning to Nurse Galloway, the Magistrate Judge set out the applicable standards for such claims and noted that according to the competent summary judgment evidence, Clay had received a considerable amount of medical care and treatment. Although he claimed that Nurse Galloway failed to treat him properly and "falsified" the records, he offered nothing to support this conclusion.

As the Magistrate Judge observed, Clay's complaint was that Nurse Galloway's assessment of his condition agreed with that of every other medical professional who had examined him. In addition, Clay made no showing that he was actually injured during the use of force, nor that the nurse had falsified the records. His self-diagnosis of injury does not show a constitutional violation, nor does his disagreement with Nurse Galloway's assessment of his condition.

Finally, the Magistrate Judge said, although Clay complains that he was not decontaminated after chemical agents were applied, TDCJ-CID policy does not require medical staff to decontaminate inmates because the inmates are allowed to do so themselves. The Magistrate Judge noted that no special decontamination procedures are required for OC pepper spray because it is biodegradable and will not persist on clothing or affected areas; in addition, the effects of this agent last from 20 to 90 minutes. As the Fifth Circuit has said, decontamination from pepper spray "consists primarily of flushing the eyes with water." Wagner v. Bay City, Texas, 227 F.3d 316, 319 n.1 (5th Cir. 2000). The Magistrate Judge concluded that the fact that Nurse Galloway did not decontaminate Clay, when no special decontamination protocols were required or necessary, did not show deliberate indifference to his serious medical needs.

Clay filed objections to the Magistrate Judge's Report on January 19, 2006. In his objections, Clay first discusses various motions which he filed complaining that the Defendants' motion for summary judgment was not timely. He says that he has been unable to obtain discovery, but the discovery plan for the case provides for disclosure only, and the record shows that disclosure has been effected. Clay does not indicate what materials he could obtain through discovery which were not already given to him through disclosure. He asserts that he has not had enough time to respond to the motion for summary judgment, which was filed in August of 2005.

Clay says that Dr. Vincent, who gave an affidavit, has not personally seen him. The doctor's affidavit makes this clear, saying that Dr. Vincent has reviewed Clay's medical records, that he is competent to review such records, and that his conclusions were drawn from this review. He complains that he was not seen by a doctor after the uses of force, which also is not disputed; the

record shows that he was seen by a nurse. Clay repeatedly complains that he has been denied discovery. He does not address any of the specific points made by the Magistrate Judge regarding either his claim that he has been denied food or his claim that Nurse Galloway provided him with improper medical care. Clay's objections are without merit.

Clay's lawsuit also faces a more serious obstacle. At the time that Clay filed this lawsuit, he had previously had at least three lawsuits dismissed as frivolous or for failure to state a claim upon which relief may be granted. *See* Clay v. Christus Spohn Memorial, et al., C-01-002 (S.D.Tex., dismissed as frivolous July 5, 2002, no appeal taken); Clay v. K-Mart, C-01-mc-0036 (S.D.Tex., dismissed as frivolous and for lack of subject matter jurisdiction September 3, 2001, no appeal taken); and Clay v. Nueces County Sheriff's Dept., et al., C-01-158 (S.D.Tex., dismissed as frivolous April 12, 2002, no appeal taken).

In other cases previously filed by Clay, there were partial dismissals of claims as frivolous or for failure to state a claim, including Clay v. Ramos, et al., C-00-0409 (S.D.Tex. 2001) (certain claims dismissed for failure to state a claim on April 3, 2001, and final judgment entered after Clay refused to cooperate in trial preparation, which the Southern District of Texas termed a "clear record of contumacious conduct"); Clay v. Nueces County Jail, et al., C-00-0477 (S.D.Tex.) (certain claims and parties dismissed as frivolous and for failure to state a claim on March 28, 2002; final judgment with prejudice entered on May 7, 2002, for failure to prosecute); and Clay v. Vasquez, et al., C-01-0135 (S.D.Tex.) (certain claims and parties dismissed as frivolous and for failure to state a claim on March 12, 2002; final judgment with prejudice entered on May 7, 2002, for failure to prosecute).

The Fifth Circuit has held that partial dismissals of claims as frivolous, even if the remainder of the claims are dismissed on other grounds, can count as strikes. Comeaux v. Cockrell, 72 Fed.Appx. 54 (5th Cir., July 15, 2003) (not selected for publication in the Federal Reporter), *citing* Patton v. Jefferson Correctional Center, 136 F.3d 458, 463 (5th Cir. 1998). The Court further notes that in Clay v. Correctional Management, G-05-569, the Southern District specifically said that Clay had three strikes and referred to him as a "recreational litigator."

28 U.S.C. §1915(g), added by Act of Congress on April 26, 1996 as part of the Prison Litigation Reform Act, provides that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

As set forth above, at the time that Clay filed this lawsuit, he had previously received at least three strikes, and thus falls under the Act. The present lawsuit was signed after the enactment of the Act.

The Fifth Circuit has addressed the validity and scope of 28 U.S.C. §1915(g). Carson v. Johnson, 112 F.3d 818 (5th Cir. 1997). In Carson, the plaintiff argued that 28 U.S.C. §1915(g) was unconstitutional because it blocks access to the courts and discriminates against prisoners. However, the Court held that 1915(g) does not block prisoners from filing civil rights lawsuits, but merely from seeking *in forma pauperis* status to do so. The Court noted that deterring frivolous and malicious lawsuits is a legitimate state interest and said that "Carson's own lengthy litigation history is the strongest possible argument for the PLRA's rationality." The same is true for Clay's history of filing frivolous lawsuits.

On December 31, 1996, the Fifth Circuit decided another case dealing with 28 U.S.C. §1915(g). Adepegba v. Hammons, 103 F.3d 383 (5th Cir. 1996). In this case, the Fifth Circuit stated as follows:

> Section 1915(g) is a procedural rule governing the process by which indigent individuals, including prisoners, bring civil actions or appeals in the federal courts. Before amendment, section 1915 allowed qualifying prisoners to bring an action or appeal without prepaying court fees, which are normally in excess of $100. [citation omitted].
>
> The amended provisions of section 1915(b) allow qualifying individuals to pay the filing fee in installments over time. 28 U.S.C. §1915(b), as amended. Although Section 1915(g) attaches consequence to past actions, we find that these consequences are matters of procedure. Section 1915(g) does not affect a prisoner's substantive rights, and it does not block his or her access to court. A prisoner may still pursue any claim after three qualifying dismissals, but he or she must do so without the aid of the i.f.p. procedure.

Adepegba, 103 F.3d at 386-87.

The revocation of the privilege bestowed by Section 1915 is not a new phenomenon.  The Fifth Circuit stated that before the Prison Litigation Reform Act, courts routinely revoked a prisoner's ability to proceed *in forma pauperis* after numerous dismissals.  *See, e.g.*, Green v. Carlson, 649 F.2d 285 (5th Cir. 1981).  By enacting Section 1915(g), Congress determined that three prior qualifying dismissals (i.e. dismissals of lawsuits or appeals as frivolous) constituted *per se* abuse of the *in forma pauperis* privilege.  Thus, the Fifth Circuit said that the "three strikes" provision of 28 U.S.C. §1915(g) merely codified existing practice in the courts designed to prevent prisoners from abusing the *in forma pauperis* privilege.  Adepegba, 103 F.3d at 387.  The Fifth Circuit noted that prisoners who are not allowed to proceed *in forma pauperis* may pursue their substantive claims, just like anyone else, by paying the filing fee.  This requirement is neither novel nor penal and does not increase the prisoner's liability, but puts those who abuse a privilege on the same footing as everyone else.  The Fifth Circuit expressly found that Section 1915(g) did not impair prisoners' rights, increase their liability, or impose a new duty, and concluded by holding that Section 1915(g) was applicable to Adepegba's appeal, despite the fact that this appeal was filed in December of 1995, four months prior to the enactment of the PLRA.

In this case, Clay has had at least three lawsuits previously dismissed as frivolous, as well as others which had partial dismissals as frivolous, and so comes under the statute.  He did not pay the filing fee of $250.00, and he made no showing that he was facing an imminent threat of serious physical injury at the time that he filed the lawsuit.  *See* Baños v. O'Guin, 144 F.3d 883, 885 (5th Cir. 1998).  Prisoners can invoke the "imminent danger" exception only to seek relief from a danger which is imminent at the time that the complaint is filed.  Abdul-Akbar v. McKelvie, 239 F.3d 307, 312 (3rd Cir. 2001); thus, prisoners cannot use the "imminent danger" exception to file lawsuits over matters not related to the alleged danger.

Clay has not shown that he was in imminent danger, at the time that the lawsuit was filed, because of incidents which happened several months earlier.  Abdul-Akbar, 239 F.3d at 315-16 and n.1 (inmate complaining of use of pepper spray in the past did not show "imminent danger" despite

allegations that prison officials engaged in "continuing harassment, plots to hurt or kill him, and other forms of retaliation"). Because Clay has not paid the filing fee nor shown that he was in imminent danger of serious physical injury at the time that this lawsuit was filed, his lawsuit is also amenable to dismissal under 28 U.S.C. §1915(g); however, Clay should be allowed a reasonable period of time in which to pay the filing fee and proceed with his lawsuit should he choose to do so.

The Court has conducted a careful *de novo* review of the pleadings and records in this cause, as well as the Report of the Magistrate Judge and the supplemental objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court. It is further

ORDERED that the Plaintiff's *in forma pauperis* status be and hereby is REVOKED. It is further

ORDERED that the Defendants' motion for summary judgment is GRANTED, and the above-styled civil action is hereby DISMISSED with prejudice. It is further

ORDERED that, in the alternative, this lawsuit is DISMISSED with prejudice as to the refiling of another *in forma pauperis* lawsuit raising the same claims as herein presented, but without prejudice to the refiling of this lawsuit without seeking *in forma pauperis* status and upon payment of the full $250.00 filing fee. It is further

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

So **ORDERED** and **SIGNED** this **15** day of **March, 2006.**

_____
Ron Clark, United States District Judge